GEORGE B. CHASE *vs.* ALLIANCE INSURANCE COMPANY.*

In the absence of any express agreement to the contrary, a payment made in advance to the owner of a ship for freight may be recovered back, if the freight is not earned.

If under a charter party made in Scotland money is advanced there by the charterer to the owner of a ship towards the freight, the question whether it can be recovered back, if the freight is not earned, depends upon the law of Scotland.

The law of Scotland upon a question of commercial law will be presumed to be the same as our own, in the absence of Scottish adjudications or evidence to the contrary; although the law of England upon the subject is different.

If the determination of a case which depends upon the law of Scotland is submitted to the court upon an agreement of facts in which the law of Scotland upon the subject is not agreed, the agreed facts will not be discharged, upon a request first made at the argument of the case, for the purpose of taking testimony to prove the law of Scotland as a fact, if there is no suggestion that there is any statute or judicial decision applicable to the question which is not already accessible to the court.

CONTRACT upon a policy of insurance issued by the defendants, dated April 25, 1862, by which they insured the plaintiff for one year in the sum of $20,000, on the freight of the ship Flying Mist, said freight valued at $30,000, on board or not on board. The following facts were agreed in this court:

On the day when the policy declared on was issued, additional insurance was effected at other offices, in the sum of $10,000, under leave granted in this policy. The ship Flying Mist was then under a charter, executed March 4, 1862, at Glasgow, in Scotland, to persons living there, by which it was agreed that she should proceed from London, where she was then lying, " to Glasgow, and there receive on board a full and complete cargo of sheep and other cargo, . . . . . and therewith proceed to Dunedin, New Zealand, or one other port, as ordered at Otago, . . . . . freight for the same to be paid at a lump sum of twenty-six hundred and fifty pounds sterling, . . . . . and, on delivery of the outward cargo, the vessel shall at once sail for Melbourne, Sidney, Launcestown or Hobart Town, as ordered by charterer's agent at Dunedin, &c. . . . . . The freight to be paid as follows : Two thousand pounds cash on the final clearing

---

* This case was argued in March 1864.

of the ship from Greenock . . . . . and the balance on right and true delivery of the cargo at Dunedin."

Under said charter the ship sailed for Glasgow and arrived there on April 7th 1862, completed her loading, and sailed for New Zealand on the 5th of June, and was totally lost by perils of the seas on said voyage, at the entrance of the harbor of Otago, in New Zealand, on the 27th of August 1862. Due proof of loss was made, and the defendants paid to the plaintiff the sum of $13,235.32, under the policy; and the plaintiff claimed an additional sum as hereinafter stated.

The charterer paid to the master of the ship, on her clearing from Greenock, £2000, as stipulated in the charter, which sum was agreed to be valued at $10,140.37. It was admitted that no reclamation of this sum has been made; and the defendants contended that the plaintiff was not liable to refund it, and that the same should be deducted from the gross sum insured on the freight, leaving them liable only for the sum which they had already paid. And the question submitted to the court was, whether said sum of $10,140.37 should be so deducted; and it was agreed that the court should enter judgment for the plaintiff for $6764.68, with interest, or for the defendants, as this question should be determined.

*B. R. Curtis & W. G. Russell*, for the plaintiff. By the law of this commonwealth and the general maritime law of the world the money advanced to the plaintiff may be recovered back. *Benner* v. *Equitable Ins. Co.* 6 Allen, 222, and cases cited. *Minturn* v. *Warren Ins. Co.* 2 Allen, 86, and cases cited. *Howland* v. *The Lavinia*, 1 Pet. Adm. 126. However the law may be in England, this was a Scotch contract, and is to be construed by the law of Scotland; and the law of Scotland was borrowed from the continent, and is not the same with that of England. Pref. to Bell Com. 15, 16. *Hog* v. *Inglis*, Hailes' Decis. 723. *Taylor* v. *Hogg*, cited in 2 Shaw's Scot. Dig. (ed of 1844) 1319. The presumption is that the Scotch law is the same with our own. *Brown* v. *Gracey*, D. & R. (N. P.) 41, note *a* *Leavenworth* v. *Brockway*, 2 Hill, (N. Y.) 201, and cases cited Even in England, if parties enter into a contract like the present

which can be construed in no other way than as a contract for freight, the money advanced may be recovered back. [Other points in the argument are omitted.]

*S. Bartlett & M. Andros,* for the defendants. By the law of England, an advance by the charterer, provided it be of freight, without other stipulation annexed, is viewed as an absolute payment, exempt from all risk and contingency. Maclachlan on Shipping, 442–444, and cases cited. The law of England on this subject is identical with that of Scotland. 1 Bell Com. 483. It appears from several insurance cases, traced through the Scotch courts and the House of Lords, that they were all decided in all the courts exclusively on the English authorities. *Stewart* v. *Greenock Marine Ins. Co.* 6 Cas. in Court of Sessions, 359; 8 Ib. 336; S. C. 2 H. L. Cas. 159. *Fleming* v. *Smith,* 8 Cas. in Court of Sessions, 627; S. C. 1 H. L. Cas. 513. *Turner* v. *Scottish Marine Ins. Co.* 13 Cas. in Court of Sessions, 652; S. C. 1 Macq. 334. The sum advanced in this case has no characteristic of a loan. [Other points in the argument are omitted.]

The defendants also applied to have the statement of agreed facts discharged, in order to allow them to prove the law of Scotland by depositions.

HOAR, J.[*] The first question which the case presents is, whether the payment on account of freight stipulated in the charter party, and which was made before the vessel sailed from Greenock, can be recovered back by the charterer from the insured. If it can, then the whole valued freight was at risk at the time of the loss, and the plaintiff is entitled to recover.

" The general rule of law," as was said by the chief justice in the recent case of *Benner* v. *Equitable Ins. Co.* 6 Allen, 222, " is, that freight paid in advance is not earned, unless the voyage for which it is stipulated to be paid is fully performed; and the owner of the vessel is liable to a claim for reimbursement in favor of the shipper, if for any fault not imputable to the latter the contract of affreightment is not fulfilled. This rule may be

---

[*] BIGELOW, C. J. did not sit in this case.

varied or annulled by an express agreement in the charter party or bill of lading, by which it is provided that money paid in advance on account of the freight shall be deemed to be absolutely due to the owner at the time of its prepayment, and not in any degree dependent on the contingency of the performance of the contemplated voyage, and the entire fulfilment of the contract of carriage. But as such a stipulation is intended to control the usual rule of law applicable to such contracts, and to substitute in its place a positive agreement of the parties, it is necessary to express it in terms so clear and unambiguous as to leave no doubt that such was the intention in framing the contract of affreightment. Otherwise, the general rule of law must prevail." The doctrine thus stated, and which was held upon full consideration in *Minturn* v. *Warren Ins. Co.* 2 Allen, 86, renders any discussion of the general proposition unnecessary, that a payment made in advance for freight may be recovered back, if the freight is not earned, in the absence of any express agreement to the contrary.

But the charter party in the case before us was made in Scotland, and is therefore a contract to be governed by the law of Scotland, if that law differs from the law of Massachusetts, and not by the law of this commonwealth.

We do not find that the precise point has ever been expressly adjudicated by any Scottish court; nor has any case been cited which is a direct authority in point. The defendants have relied in argument upon a series of English decisions which are more or less at variance with the decisions of this court upon the subject, and upon citations of Scotch authorities to show that the mercantile law of Scotland is generally the same with that of England.

But while we can have no doubt that the decisions of English courts would be regarded as of the highest authority by any Scotch tribunal upon a question of commercial law, we do not find that these decisions are binding upon the courts of Scotland. The question is not one of local jurisprudence, but of the construction and effect of a commercial contract, on which the rule adopted by any local tribunal, if it seems to be erroneous

upon general principles, must be confined to the jurisdiction within which it is made. *Wood* v. *Corl*, 4 Met. 203. *Cribbs* v. *Adams*, 13 Gray, 597. The general doctrine of the English cases, although they do not seem to be wholly consistent or founded on any clear and uniform principle, appears to be that a payment of freight in advance cannot be recovered back, unless it is made to appear affirmatively that it was intended by the parties merely as a loan. But as we do not regard these decisions as correct in principle, we must treat them as indicating a local peculiarity of English law, which is not to be extended beyond the jurisdiction in which it is shown to have been adopted. It appears to us inconsistent not only with sound principles of construction in the interpretation of the contracts to which it applies, but also irreconcilable with the general principles relating to affreightment which have been recognized by the judges and approved text writers of Scotland.

Coming to this conclusion, the plaintiff is entitled to recover upon the facts agreed ; and it is not necessary to consider the other question which has been elaborately argued, whether, under the English decisions, the freight to which the valuation in this policy applies would be only that which remained at risk after the advance payment had been made under the charter party.

We have held this case for a considerable time under advisement, and have carefully examined the authorities cited by counsel, although we do not consider an extended review of them advisable. Since the decision was made, but before it was announced, the counsel for the defendants have formally presented a motion, which was suggested at the close of their argument, to discharge the statement of facts so far as to allow testimony to be taken to prove the law of Scotland as a fact in the case. The suggestion certainly came very late at the time when it was first made. The parties had elected to submit the case to the court as it stood; and the argument had been made upon that basis. But as there is no suggestion that there is any statute or judicial decision applicable to the question which is not already accessible to the court, we see no sufficient reason

to believe that justice would be promoted by further delay, or that any substantial change would be made in the position of the cause as it was at first submitted by the parties.

*Judgment for the plaintiff.*

